IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUBEN CONTRERAS,

    Petitioner,                  No. CIV S-03-0391 FCD EFB P

    vs.

EDWARD ALAMEIDA, et al.,

    Respondents.               <u>FINDINGS & RECOMMENDATIONS</u>

                              /

      Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is in custody pursuant to a 1980 San Joaquin County conviction on a charge of second degree murder. In the petition for writ of habeas corpus filed in this action on February 28, 2003, petitioner attacks a decision of the California Board of Prison Terms rendered on September 20, 2002, finding him not suitable for parole. Petitioner alleges that his right to due process was violated because the Board of Prison Terms incorrectly relied on unchanging factors in finding him unsuitable for parole. The undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

BACKGROUND

In 1979, petitioner was convicted of second degree murder and received a sentence of 15 years-to-life in state prison for his involvement in a shooting death. Pet. at 1; Answer, Ex. B at 9-15. The record reflects that petitioner went to the victim's house with his brothers for the purpose of shooting the victim because petitioner and his brothers believed the victim had shot petitioner's nephew. *Id.* Petitioner did not commit the actual shooting, but he was present at the scene. *Id.*

On September 20, 2002, the Board of Prison Terms (BPT or Board) held a parole consideration hearing and found petitioner not suitable for parole. Answer, Ex. B. Petitioner subsequently challenged the Board's decision in a petition for a writ of habeas corpus filed in the California Supreme Court. Answer, Ex. C. That petition was summarily denied on January 15, 2003. *Id.*

Petitioner filed the instant petition for a writ of habeas corpus on February 28, 2003. Petitioner alleges that he has "met all statutory and regulatory guidelines to gain parole suitability" and that the Board's failure to find him suitable for parole has resulted in a due process violation. Pet. at 5. He contends that the Board has improperly relied on the gravity of his crime and his juvenile record to deny him a parole date. *Id.* at 6. Petitioner states that he has been found unsuitable "for the 12th year." *Id.* at 5. This court has independently verified that petitioner is still in custody.

On October 16, 2003, respondents filed an answer. They contend that the petition should be denied because petitioner received all the process that was due at the September 20, 2002 suitability hearing.

ANALYSIS

A. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

////

B. Due Process

Petitioner claims that the failure of the BPT to find him suitable for parole deprived him of his liberty without due process of law.

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)). California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903. Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and therefore violated due process.

Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted). Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. *Id.* at 1390 (quoting *Greenholtz*, 442 U.S. at 16). *See also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues). Violation of state mandated procedures will constitute a due process violation

4

only if the violation causes a fundamentally unfair result. *Estelle v. McGuire*, 502 U.S. 62, 65 (1991).

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability. Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402. The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision." *McQuillion*, 306 F.3d at 904 (citing *Superintendent v. Hill*, 472 U.S. 445, 456 (1985)); *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir. 1992)). For purposes of AEDPA, *Hill's* "some evidence" standard is "clearly established" federal law. *See Sass*, 461 F.3d at 1129 (citing *Hill*, 472 U.S. at 456 (1985). "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder. *Powell*, 33 F.3d at 40 (citing *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some indicia of reliability." *Jancsek*, 833 F.2d at 1390. *See also Perveler*, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint*, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. *Id.*

In *Biggs*, the Court of Appeals for the Ninth Circuit indicated, in dicta, that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation. While the Ninth Circuit rejected several of the reasons given by the BPT for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. 334 F.3d at 913. However, the court cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to that

5

offense in denying parole could violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest in parole.

*Id.* at 916. The court also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* at 917.

In *Sass*, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his convicted offenses in combination with his prior offenses. 461 F.3d at 1126. Citing *Biggs*, the petitioner in Sass contended that reliance on these unchanging factors violated due process. The Ninth Circuit disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination. *Id.* at 1129. The court provided the following explanation:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. *Cf. id.* The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

*Id.*

////

6

In this case, as in *Biggs* and *Sass*, the BPT's decision that petitioner was unsuitable for parole was supported by "some evidence" that bore "indicia of reliability." At the conclusion of the September 20, 2002 hearing, the Board found petitioner unsuitable for parole based upon the following: (1) the cruel and callous manner in which the commitment offense was carried out; (2) the motive for the crime was "inexplicable or very trivial;" (3) petitioner's prior record reflected an escalating pattern of criminal conduct; (4) petitioner failed previous grants of probation and could not be counted on to avoid committing further crimes; (5) petitioner's previous criminal history, which included "strong-armed robbery, disturbing the peace, possession of marijuana, driving under the influence and a burglary; (6) petitioner did not have a concrete release plan; (7) a recent psychiatric report was "basically inconclusive;" and (8) the fact that the Los Angeles District Attorney expressed oral opposition to a finding of suitability. Answer, Ex. B at 57-60. The Board considered and commented on factors favorable to release, such as petitioner's prison work history, vocational certificates earned, and the absence of recent prison disciplinary reports. *Id.* at 60. On balance, the Board concluded that petitioner was not yet ready for release. Contrary to *Biggs*, this is not a case where petitioner's due process rights are implicated by repeated parole denials based upon continued reliance solely on the unchanging factors of the commitment offense and conduct prior to imprisonment in the face of a positive psychological report and substantial evidence of remorse and rehabilitation. Although the undersigned might decide the issue of petitioner's suitability for parole differently were he a member of the Board, this court cannot say that the record of petitioner's September 20, 2002, suitability hearing is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.[1]

---

[1] In the traverse, petitioner claims that the Board and former governor Gray Davis, California's governor at the time of petitioner's September 20, 2002 parole hearing, denied him a parole date based on a "no parole policy" of "denying parole to certain class of life prisoners." Traverse at 10. Petitioner has provided no evidence of such a policy, nor has he provided evidence that a "no parole" policy on the part of the former governor played any part in the

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 25, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

Board's decision to find petitioner unsuitable for parole. Accordingly, petitioner's contention in this regard should be rejected. *See In re Rosenkrantz*, 29 Cal.4th 616 (2002) (California Supreme Court rejected for lack of evidence the petitioner's claim that the decision of Governor Gray Davis to reverse a decision of the Board finding him suitable for parole resulted from a blanket policy of denying parole in all cases in which a prisoner has been convicted of murder). In any event, a traverse is not the proper pleading to raise new grounds for relief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).